**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>    Plaintiffs,<br><br>    v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., a corporation;<br><br>QUINCY BIOSCIENCE, LLC, a limited liability company;<br><br>PREVAGEN, INC., a corporation d/b/a/ SUGAR RIVER SUPPLEMENTS;<br><br>QUINCY BIOSCIENCE MANUFACTURING, LLC, a limited liability company; and<br><br>MARK UNDERWOOD, individually and as an officer of QUINCY BIOSCIENCE HOLDING COMPANY, INC., QUINCY BIOSCIENCE, LLC, and PREVAGEN, INC.<br><br>    Defendants. | Misc. No.: 1:20-mc-00023-EGS<br><br>[S.D.N.Y. Case No. 1:17-cv-00124-LLS] |

**FEDERAL TRADE COMMISSION'S REPLY**
**TO GEORGETOWN ECONOMIC SERVICES, LLC'S OPPOSITION**
**TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

I.   DEFENDANTS HAVE WAIVED PROTECTION FOR THE DISCLOSED GES ANALYSES..................................................................................... 2

    A.   Non-Testifying Expert Protection............................................................ 2

    B.   Attorney-Client Privilege and Work Product Protection ........................ 6

II.  SUBJECT MATTER WAIVER IS APPROPRIATE AS A MATTER OF FAIRNESS ... 8

    A.   Appropriate Legal Standard .................................................................... 9

    B.   Defendants' Use of the GES Analyses Warrants a Finding of Subject Matter Waiver ......................................................................................... 11

III. THE FTC'S SUBPOENA IS NOT UNDULY BURDENSOME.................................... 14

IV.  THE MOTION SHOULD NOT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK ................................................................................... 19

V.   CONCLUSION....................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Banneker Ventures, LLC v. Graham*,
   253 F. Supp. 3d 64 (D.D.C. 2017) ........................................................................ 10

*Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*,
   103 F.R.D. 52 (D.D.C. 1984) ............................................................................... 6

*City of Capitola v. Lexington Ins. Co.*,
   No. 12-3428 LHK (PSG), 2013 WL 1087491 (N.D. Cal. Mar. 13, 2013) .................................. 3

*Commonwealth Land Title Ins. Co. v. Sun Valley Credit, LLC*,
   No. 1:13-CV-00113-EJL, 20015 WL 807055 (D. Idaho Feb. 26, 2015) ................................... 3

*Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*,
   296 F.R.D. 3 (D.D.C. 2013) ............................................................................. 4, 5

*Fairholme Funds, Inc. v. FHFA*,
   No. 1:13-CV-1053-RCL, 2019 WL 5864595 (D.D.C. Nov. 8, 2019) ..................................... 18

*FDIC v. Galan-Alvarez*,
   15 Misc. 752 (CRC), 2015 WL 5602342 (D.D.C. Sept. 4, 2015) .................................... 19, 21

*Flanagan v. Wyndham Int'l Inc.*,
   231 F.R.D. 98 (D.D.C. 2005) ............................................................................ 14

*FTC v. Staples, Inc.*,
   No. 15-2115 (EGS), 2016 WL 4194045 (D.D.C. Feb. 26, 2016) .................................... 15, 18

*Google, LLC v. Fortress Inv. Grp. LLC*,
   No. 20 Misc. 132 (KPF), 2020 WL 1304039 (S.D.N.Y. Mar. 17, 2020) ................................ 20

*Hood v. City of Chicago*,
   No. 1:19-mc-00123(APM), 2019 WL 5295169 (D.D.C. Oct. 18, 2019) ................................. 21

*HT S.R.L. v. Velasco*,
   15 Misc. 664 (RBW), 2015 WL 13759884 (D.D.C. Nov. 13, 2015) ................................... 20

*Hughes v. Abell*,
   No. 09-0220 (JDB), 2012 WL 13054819 (D.D.C. Mar. 7, 2012) .................................... 10, 11

*In re Denture Cream Prods. Liab. Litig.*,
   292 F.R.D. 120 (D.D.C. 2013) ........................................................................... 14

*In re Martin Marietta Corp.*,
  856 F.2d 619 (4th Cir. 1988) ........................................................................... 13

*In re Morning Song Bird Food Litig.*,
  No. 12cv1592 JAH(RBB), 2015 WL 12791470 (S.D. Cal. Jan. 23, 2015) ........................... 2, 3

*In re Sealed Case*,
  676 F.2d 793 (D.C. Cir. (1982) ......................................................................... 6

*In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*,
  113 F. Supp. 3d 286 (D.D.C. 2015) .................................................................... 21

*Jones v. Celebration Cruise Operator, Inc.*,
  No. 11–61308–CIV, 2012 WL 1029469 (S.D. Fla. March 26, 2012) ................................... 4

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*,
  307 F.R.D. 30 (D.D.C. 2014) ........................................................................... 20

*Millennium TGA, Inc. v. Comcast Cable Comm. LLC*,
  286 F.R.D. 8 (D.D.C. 2012) ............................................................................ 18

*Murray v. Southern Route Maritime, S.A.*,
  No. C12-185RSL, 2014 WL 1671581 (W.D. Wash. Apr. 28, 2014) ..................................... 3

*Northrop Corp. v. McDonnell Douglas Corp.*,
  751 F.2d 395 (D.C. Cir. 1984) ......................................................................... 17

*U.S. Dep't of Treas. v. Pension Benefit Guar. Corp.*,
  301 F.R.D. 20 (D.D.C. 2014) ....................................................................... 14, 17

*U.S. Dep't of Treas. v. Pension Benefit Guar. Corp.*,
  351 F. Supp. 3d 140 (D.D.C. 2018) .................................................................... 18

*US Airline Pilots Ass'n v. Pension Benefit Guar. Corp.*,
  274 F.R.D. 28 (D.D.C. 2011) ......................................................................... 6, 9

*Wultz v. Bank of China, Ltd.*,
  304 F.R.D. 38 (D.D.C. 2014) ........................................................................... 22

*XY, LLC v. Trans Ova Genetics, L.C.*,
  307 F.R.D. 10 (D.D.C. 2014) ...................................................................... 19, 22

*Zeiger v. WellPet LLC*,
  No. 17-cv-04056-WHO, 2018 WL 10151156 (N.D. Cal. Apr. 10, 2018) ................................ 2

iii

**Other Authorities**

Charles A. Wright, 8 Fed. Prac. & Proc. § 2016.2 (3d ed., 2010 update) ....................................... 9

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................................ 15

Fed. R. Civ. P. 45(d)(3)(A)(iv) ................................................................................................... 14

Fed. R. Evid. 502 Addendum to Comm. Note.............................................................................. 9

Fed. R. Evid. 502 Advisory Comm. Note.............................................................................. 7, 12

Fed. R. Evid. 502(a)...................................................................................................................... 9

For all the sound and fury in the opposition brief by Georgetown Economic Services, LLC ("GES"), it fails utterly to counter the FTC's argument that Defendants waived the protection afforded non-testifying experts under Federal Rule of Civil Procedure 26(b)(4)(D) by providing copies of GES's work to the FTC during settlement discussions, by including the results of one analysis in a manuscript posted on Defendants' website, and by relying on that manuscript in their motion to dismiss Plaintiffs' complaint.  Nor does the enactment of Federal Rule of Evidence 502, over which much ado is made, save Defendants from the consequences of their strategic decision to insert the GES analyses into this case:  a subject matter waiver that entitles the FTC, as a matter of fairness, to the context and proper understanding of the disclosed GES work.

GES's extraordinary request to quash the entire subpoena as unduly burdensome also lacks merit, relying on inaccurate assertions that the requested documents have already been produced by Defendants and an overstatement of the volume of documents that would need to be reviewed.  Moreover, any burden to GES is outweighed by the importance of the discovery to the core issue of the FTC's case and the high stakes to consumers who have already spent well over $165 million for a product the FTC alleges is wholly ineffective.

Finally, the Court should not transfer the case to the Southern District of New York.  The instant motion presents discrete legal issues separate from the merits of the underlying case that the issuing court has not previously addressed.  Transfer would delay resolution of the motion and potentially necessitate another extension of the fact discovery deadline, currently set for July 31, 2020.  All parties involved in this proceeding have a presence in this District, and the issues now have been fully briefed before this Court.

The Court, therefore, should grant the FTC's motion and compel production of the documents sought by the FTC's subpoena.

## I.     DEFENDANTS HAVE WAIVED PROTECTION FOR THE DISCLOSED GES ANALYSES

### A.     Non-Testifying Expert Protection

GES cites no case law to counter the FTC's argument that Defendants waived the protection afforded non-testifying experts under Federal Rule of Civil Procedure 26(b)(4)(D). Instead, without addressing waiver, GES describes the differences in protection afforded testifying and non-testifying experts under Rule 26, and states that, given the greater protection afforded non-testifying experts, it would be "illogical" to allow the FTC more discovery from GES than from Defendants' testifying experts. Opp'n (Dkt. 4) at 15-16. Having failed to rebut or even address the controlling law, GES then skips ahead, arguing that, should the Court find waiver, the scope of the waiver should be limited.

GES's discussion of the differences in protection afforded testifying and non-testifying experts does nothing to rebut the FTC's argument that Defendants have waived the protection afforded non-testifying experts. As the FTC established in its motion, numerous courts have found that the protections of Rule 26(b)(4)(D) are subject to waiver. *See*, *e.g.*, *Zeiger v. WellPet LLC*, No. 17-cv-04056-WHO, 2018 WL 10151156, at *2-3 (N.D. Cal. Apr. 10, 2018) (consulting expert protection waived where party referenced testing results in complaint and relied on results in overcoming motion to dismiss); *In re Morning Song Bird Food Litig.*, No. 12cv1592 JAH(RBB), 2015 WL 12791470, at *7 (S.D. Cal. Jan. 23, 2015) (consulting expert protection for reports waived where defendants voluntarily disclosed the contents of the reports to authorities and attached a letter discussing and summarizing one report to their motion to dismiss); *City of Capitola v. Lexington Ins. Co.*, No. 12-3428 LHK (PSG), 2013 WL 1087491, at *1-2 (N.D. Cal.

2

Mar. 13, 2013) (fairness mandated subject matter waiver entitling defendant to entire

investigatory file of plaintiff's expert consultant where plaintiff had disclosed to defendant only

certain documents pertaining to consultant's analysis and conclusions in order to support its

position).

Indeed, with regard to waiver, the protection afforded non-testifying experts is no

different from any other privilege or protection.  There is "no persuasive reason why the non-

testifying expert privilege should be maintained despite a knowing and intelligent disclosure

when virtually every other privilege, including the attorney-client privilege and work product

protections, are subject to waiver."  *In re Morning Song Bird Food Litig.*, 2015 WL 12791470, at

*7 (quotation and citation omitted).  Thus, "if the facts known or opinions held by a non-

testifying expert are intentionally disclosed or used in a way that is contrary to the purpose of the

privilege, waiver may apply."  *Murray v. Southern Route Maritime, S.A.*, No. C12-185RSL, 2014

WL 1671581, at *1 (W.D. Wash. Apr. 28, 2014).

As set forth in the FTC's motion, Defendants used the GES analyses in a manner contrary

to the purpose of the protection by disclosing those analyses in settlement talks, by posting one

of the analyses on their website, and, most significantly, by using that analysis in litigation to

support their motion to dismiss.  Defendants thus have waived the protections afforded non-

consulting experts by Rule 26(b)(4)(D).[1]

---

[1] Defendants make much of the fact that the FTC has not attempted to obtain discovery of GES's materials by showing "exceptional circumstances" under Rule 26(b)(4)(D)(ii).  *See* Opp'n at 11-14.  The FTC, however, is not required to show such circumstances, as waiver forms an independent basis on which to obtain the discovery it seeks.  None of the cases cited by the FTC permitting discovery after finding waiver of the protection under Rule 26(b)(4)(D) required an additional showing of exceptional circumstances.  *See also Commonwealth Land Title Ins. Co. v. Sun Valley Credit, LLC*, No. 1:13-CV-00113-EJL, 20015 WL 807055, at *9 (D. Idaho Feb. 26, 2015) ("[T]he party seeking to discover facts or opinions held by a non-testifying expert must … prove the existence of exceptional circumstances *or* waiver.") (emphasis added); *Jones v.*

Having failed to address the Commission's waiver argument, Defendants contend that, should the Court find waiver, the scope of the waiver should be limited. GES's opposition relies heavily on this Court's decision in *Eidos Display, LLC v. Chunghwa Picture Tubes, Ltd.*, 296 F.R.D. 3 (D.D.C. 2013), while completely disregarding three major differences between the facts underlying that ruling and the facts of this case. In *Eidos*, the defendant claimed that the plaintiffs had waived the protection for non-testifying experts by using an expert's declaration as support for two pleadings. *Id.* at 7. The Court, after examining competing lines of authority regarding waiver and Rule 26(b)(4)(D), found that, to the extent the plaintiffs had waived anything, they had waived only the expert's declaration itself. *Id.* at 8.

The facts of *Eidos* are distinguishable from the instant matter in three critical respects. First, the Court noted that it was electing to follow the line of cases that had not found waiver "especially given the limited extent" of the plaintiffs' reliance on the expert's declaration in its brief. *Id.* Second, the Court noted that the defendant—the party *seeking* discovery—had been primarily responsible for bringing the expert's work into the case to that point, having cited the declaration many more times in its brief than the plaintiffs. *Id.* at 5, 8. Third, the Court found that the defendant's continued effort to take the expert's deposition despite the plaintiffs' willingness to delete their references to the declaration in their brief suggested that the defendant's true purpose was to depose the expert on issues unrelated to those for which his declaration had been submitted. *Id.* at 9.

---

*Celebration Cruise Operator, Inc.*, No. 11–61308–CIV, 2012 WL 1029469, at *3 (S.D. Fla. March 26, 2012) ("[E]ven if the Court were to find that Dr. Figuereo's proposed treatment were covered by Rule 26(b)(4), extraordinary circumstances and waiver each independently would mandate disclosure of any records Dr. Figuereo may possess on which he relied . . . .").

By contrast, Defendants in the instant case have repeatedly and publicly relied on the GES analyses, going so far as to post a GES analysis on their own website and attaching it to their motion to dismiss, arguing that the results show the Madison Memory Study proves the Prevagen products' efficacy and substantiates their advertising claims.  *See* Opp'n at 5 (challenged advertising claim that efficacy of Defendants' product is clinically proven to improve memory "largely (although not entirely)" based on the findings of the Madison Memory Study).  Additionally, in this case, unlike in *Eidos*, it is the party opposing discovery—Defendants—who used the disclosed material in the underlying case.  Finally, the FTC does not seek discovery on issues unrelated to the underlying case, but rather asks for GES's information relating directly to human clinical studies involving the sole active ingredient in the product that Defendants claimed was "clinically proven" to improve memory and provide other cognitive benefits.  Those are the very claims at issue in the underlying case.  While the two GES analyses involved data from the Madison Memory Study, any work GES may have done on other studies of the same product would have direct bearing on the credibility of the disclosed GES analyses and their value as evidence on the central question of whether the product works as claimed.  The Madison Memory Study results cannot be fairly viewed in isolation and without regard to potentially contradictory evidence from other studies.[2]

---

[2] The Court in *Eidos* did note that "while it is unclear whether Rule 26(b)(4)(D) is even subject to waiver, the general trend in other districts has been to find that it is not."  *Eidos*, 296 F.R.D. at 7.  The Court, however, ultimately did not decide the issue of whether a party could waive protection for a non-testifying expert.  Rather, after acknowledging a line of contrary authority holding that a party could waive protection for a consulting expert, the Court found that those "cases do not call for waiver in the precise circumstances presented here."  *Id.* at 8.  The Court also noted "the uncertain state of the law with respect to waiver and Rule 26(b)(4)(D)" in finding that, if the plaintiffs had waived anything, they had waived only the expert witness's declaration. *Id.*

*Eidos*, therefore, does not support Defendants' contention that the Court should limit the scope of the waiver in this case.  As discussed more fully *infra* in Section III, courts finding waiver apply Federal Rule of Evidence 502 and relevant case law to the specific facts of the matter before them to determine the scope of the waiver.  In this case, where Defendants have sought to use GES's analyses to advance their position in the underlying litigation, the waiver as a matter of fairness should extend to undisclosed communications and information concerning GES's work in order to allow the FTC to place the GES results in context.

B.     Attorney-Client Privilege and Work Product Protection

GES attempts to avoid the indisputable fact that Defendants waived *work product protection* for the disclosed GES analyses by focusing only on the issue of *attorney-client privilege*.  Specifically, GES states that it couldn't have waived the attorney-client privilege because the disclosed analyses did not contain legal advice.  Opp'n at 20.  GES then moves on to discuss waiver in the context of settlement without addressing waiver of work product protection.  The FTC, however, contends that the disclosures at issue waived *work product protection* for the GES analyses.  Indeed, GES concedes as much by stating earlier in its brief that the documents sought by the FTC's subpoena "are protected by the work product doctrine because they were generated by GES in its capacity as a consulting expert . . . ."  *Id.* at 18.  *See also US Airline Pilots Ass'n v. Pension Benefit Guar. Corp.*, 274 F.R.D. 28, 30 (D.D.C. 2011) (rejecting party's argument that disclosed report did not constitute work product because it did not contain privileged information but rather set forth only facts and summarized findings).

The law is clear that a party who uses work product in a manner contrary to the purpose of the doctrine, including by disclosing it to an adversary, waives its protection.  *See In re Sealed Case*, 676 F.2d 793, 817-18 (D.C. Cir. (1982); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 67 (D.D.C. 1984) ("Voluntary disclosure to an adversary waives both the

6

attorney-client and work-product privileges."). GES's analyses were work product, and
Defendants waived protection for those materials by disclosing them to the FTC and, in the case
of one of the analyses, even filing it with the court as part of their motion to dismiss and posting
it on their website.

GES also argues in this context that the Court should not find waiver based on disclosure
in the context of settlement discussions. GES, however, fails to refute, or even address, the
FTC's argument that courts can and have found waiver based on disclosure of protected
materials to an adversary in the context of settlement negotiations. Rather, it states only that the
courts in the FTC's cited cases did not find a broad subject matter waiver, noting as support that
the cases were decided before the enactment of Federal Rule of Evidence 502. GES again
misses the point of the FTC's argument in this regard and misconstrues the applicability of Rule
502. The FTC cited the cases at issue to support the proposition that courts can and do find
waivers in the settlement context, and those cases remain good law regarding that issue.
Furthermore, Defendants' references to Rule 502 are irrelevant, as that rule has no effect on
whether a waiver of privilege or protection *occurred*. Rather, it comes into play only following a
finding of waiver and serves to govern the *scope* of that waiver. "The rule makes no attempt to
alter federal or state law on whether a communication or information is protected under the
attorney-client privilege or work-product immunity as an initial matter." Fed. R. Evid. 502
Advisory Comm. Note. Thus, the fact that the cases cited by the FTC were decided before Rule
502's enactment is irrelevant with regard to their holdings concerning whether a waiver was
effected.

Finally, the Commission notes that Defendants' argument regarding waiver in the
settlement context does nothing to rebut the FTC's argument that Defendants waived protection

for one of the two GES analyses by filing it with the trial court in support of their motion to dismiss and by posting it on their website.  The Court thus could, and should, find waiver for that analysis on those wholly separate grounds.[3]

Based on the arguments set forth in the Commission's motion, therefore, the Court should find that Defendants waived protection for the GES analyses by providing the analyses during settlement discussions, in their advertising, and in litigation.  Once the Court has found a waiver, it should look to Rule 502 and determine that the facts of *this case* warrant a finding of subject matter waiver, as articulated below.

## II.    SUBJECT MATTER WAIVER IS APPROPRIATE AS A MATTER OF FAIRNESS

GES argues against a finding of subject matter waiver by noting throughout its brief that certain cases cited by the FTC for issues other than subject matter waiver did not find such a waiver.  As set forth below, however, application of the relevant law to the facts of *this case*— where Defendants have used the results of the GES analyses to advance their position in litigation—warrants a finding that, as a matter of fairness, the FTC is entitled to all documents relating to GES's clinical study work for Defendants and, most critically, to all of the analyses GES performed on the Madison Memory Study.

GES also argues, incorrectly, that the cases cited by the FTC that pre-date Rule 502's enactment in 2008 are no longer good law.  As stated by a court in this District:  "Although Rule

---

[3] The FTC notes as well that, even if the Court were to find that Defendants did not waive protection for the second GES analysis (the "SUR-Analysis") by disclosing it during settlement discussions, Defendants' use of the first GES analysis effected a waiver for all information concerning GES's work regarding the Madison Memory Study data, including the SUR-Analysis.  As explained *infra* in Section III, once Defendants shared one GES analysis with Plaintiff, the court, and the public, the FTC became entitled, as a matter of fundamental fairness, to discover information relating to all GES work concerning the same subject matter, *i.e.,* all analyses that GES performed on the same data from the same study.

502 adjusts the mechanism for subject-matter waiver in cases of both inadvertent and deliberate disclosure, it 'does not alter the substantive law regarding when a party's *strategic use in litigation* of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter.'" *US Airline Pilots Ass'n*, 274 F.R.D. at 32 (quoting Fed. R. Evid. 502 Addendum to Comm. Note) (emphasis added).  Therefore, contrary to GES's repeated assertions, pre-Rule 502 case law addressing subject matter waiver in the context of a party's strategic use of protected material—as occurred in this matter—is still good law.  *See US Airline Pilots Ass'n*, 274 F.R.D. at 33, n.2 (parties' arguments involving pre-Rule 502 law still relevant, as "Rule 502 did not change the substantive law regarding subject-matter waiver where privileged material is used strategically").

A.      Appropriate Legal Standard

Once a court finds that a waiver has occurred, it looks to Federal Rule of Evidence 502 to determine the waiver's scope.  *US Airline Pilots Ass'n*, 274 F.R.D. at 31.  Rule 502 provides that a waiver extends to undisclosed communications or information only if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

Under Rule 502, "subject-matter waiver is appropriate as a matter of fairness where 'the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials.'"  *US Airline Pilots Ass'n*, 274 F.R.D. at 32 (quoting Charles A. Wright, 8 Fed. Prac. & Proc. § 2016.2 (3d ed., 2010 update)).

9

Accordingly, multiple courts in this District applying Rule 502 have found that fairness compels a finding of subject matter waiver where a party uses privileged material to gain a tactical advantage in litigation.  *See, e.g.*, *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64 (D.D.C. 2017); *Hughes v. Abell*, No. 09-0220 (JDB), 2012 WL 13054819 (D.D.C. Mar. 7, 2012). In *Banneker*, the plaintiff sought memoranda of interviews conducted by a law firm hired by the defendant, Washington Metropolitan Area Transit Authority (WMATA), to investigate the conduct that eventually became the subject of plaintiff's suit.  *Banneker*, 253 F. Supp. 3d at 68-69.  The law firm produced a report that included multiple references and citations to the memoranda, and WMATA subsequently released the report to the public.  *Id.* at 69, 73.  The court found that WMATA had intentionally waived attorney-client privilege as to the report and that the report and undisclosed memoranda concerned the same subject matter.  *Id.* at 73-74.  The court then found that fairness dictated that the waiver extended to the interview memoranda, as WMATA's disclosure of some materials evinced a failure to zealously protect all of them.  *Id.* at 74.  The court stated:

> WMATA has also used the Biondi Report to its advantage in this litigation.  Fairness dictates that if WMATA is able to use the Biondi Report and facts disclosed in that report to support its claims and defenses, then [plaintiff] is entitled to the remaining facts and information contained in the interview memoranda that were not included in the Biondi Report.  The intent of subject matter waiver is to prevent a party from selectively disclosing information and documents that would otherwise be privileged to gain an advantage.

*Id.*

In *Hughes v. Abell*, the court found that the plaintiff had waived privilege as to all of his communications with a law firm by disclosing certain information relating to those communications in a declaration filed with the court.  *Hughes*, 2012 WL 13054819, at *4-6.  The court found that subject matter waiver was appropriate because it would have been unfair to the

10

defendant for the plaintiff to disclose only some of his communications with the law firm

regarding his understanding of a transaction.  *Id.* at *5.  Additionally, the court found that "the

danger of prejudice to [the defendant] from selective disclosure is ample because the disclosure

was made in a declaration intended to convince this Court to deny [the defendant's] motion for

summary judgment."  *Id.*  The court therefore ruled that "in fairness to all parties and consistent

with Rule 502, the entirety of the communications should be considered together in order to

prevent a selective and misleading presentation of this highly relevant evidence."  *Id.* (quotations

omitted).

> B.    Defendants' Use of the GES Analyses Warrants a Finding of Subject Matter
>        Waiver

Defendants' use of the GES analyses in this matter satisfies the requirements of Rule 502

for a subject matter waiver.  First, there can be no doubt that Defendants intentionally disclosed

the results of the analyses to the FTC in settlement negotiations and directly injected the results

of one of those analyses into the litigation by relying on it in their motion to dismiss the

Plaintiffs' case.

Second, the disclosed and undisclosed communications or information here concern the

same subject matter.  Defendants selectively disclosed two of the GES's analyses of the data

from the Madison Memory Study.  The FTC subpoena requests relate directly to all of the work

GES performed in analyzing the Madison Memory Study and any analysis GES conducted on

data from other studies looking at the same active ingredient for the same memory and cognitive

benefits.  Request No. 2, for example, seeks, "[c]oncerning the Madison Memory Study, all

documents concerning any statistical analysis of any data performed or reviewed by the

Company."  *See* Ex. C attached to Decl. of Michelle Rusk Submitted in Supp. of FTC's Mot. to

Compel (Dkt. 1) at 1 (emphasis added).  Similarly, Request No. 4 calls for "[a]ll communications

with any outside entity or person concerning the Madison Memory Study (including but not limited to any analyses of results or data of such study)." *Id.* at 3 (emphasis added). These documents relate directly to the subject matter of the disclosed documents: GES's work analyzing the results of the Madison Memory Study, the human clinical study upon which Defendants rely to support the Prevagen products' efficacy and "clinically proven" advertising claims. GES devotes much of its argument with respect to subject matter waiver to the contention that the FTC is not entitled to documents relating to any human clinical study other than the Madison Memory Study, as requested by Request No. 5. *See* Opp'n at 25-29. The FTC disagrees, as both the disclosed documents and the documents sought by Request No. 5 concern GES's work regarding human clinical studies involving the same ingredient for the same memory and cognitive benefits. In any case, however, Defendants cannot credibly argue that the documents concerning *the Madison Memory Study* requested in the subpoena do not relate to the subject matter of the disclosed GES analyses.

Finally, the disclosed and undisclosed materials in this case ought in fairness to be considered together "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502, Advisory Comm. Note. The work that GES performed for Defendants is critical to assessing whether Defendants have substantiated their marketing campaign that Prevagen, a jellyfish protein supplement, improves memory and provides other cognitive benefits. That question is the core issue in the underlying case. The FTC's subpoena seeks documents related to the scope of work performed by GES and the full extent of analyses GES conducted on data from the Madison Memory Study – a study that Defendants themselves admit is the primary piece of support on which they rely for the challenged claims. Opp'n at 5.

The FTC cannot adequately assess the Madison Memory Study results on which the Defendants base their case without a full understanding of how many different ways GES manipulated the data in search of the results Defendants desired.  The Complaint contends that the Madison Memory Study, as originally designed and conducted, showed no benefit of Prevagen over placebo, and that it was not until Defendants engaged in extensive post hoc slicing and dicing of different subsets of the data that they identified a few isolated outcomes that appear to be positive, amid a much larger majority of negative outcomes.  Compl. ¶¶ 28-29.

Defendants have selectively shared what are presumably the two most favorable GES analyses of a subset of data from the Madison Memory Study.  However, they have provided no information on the scope of analyses that GES performed on the study data as a whole, on various subsets of the data, or on the different methodologies it applied.  Without a complete picture of just how extensively GES mined the Madison Memory Study for favorable results, the FTC cannot assess whether the selected results are truly positive, or merely a matter of chance.[4]

Having disclosed some of GES's work reanalyzing the Madison Memory Study in order to gain a strategic advantage in the underlying litigation, Defendants cannot now claim that the related documents the FTC seeks are protected.  The FTC is entitled to discovery of those documents as a matter of fairness to put the disclosed GES results in proper context.

---

[4] Even if the Court were to find that the subject matter waiver here does not extend to any documents protected by the attorney-client privilege or opinion work product, it still should find that the waiver encompasses GES's *factual* work product:  specifically, the results of GES's analyses of data from human clinical trials, including the Madison Memory Study, relating to the efficacy of Defendants' products.  Such material constitutes pure fact work product, severable from any attorney mental impressions, opinions, or theories.  *See In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988) (stating that, while "non-opinion work product necessarily will be reflective of a counsel's approach," a distinction can be made between non-opinion work product and "pure mental impressions severable from the underlying data").

## III.     THE FTC'S SUBPOENA IS NOT UNDULY BURDENSOME

GES contends that the Court should quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45 because it imposes an undue burden on GES.  Fed. R. Civ. P. 45(d)(3)(A)(iv).  At no point during the meet and confer process, however, did GES raise this objection or propose any modifications to narrow the scope of documents requested.  Instead, GES took the position from the start that it would not comply with any part of the FTC's subpoena on privilege grounds.  The FTC rejects the contention that its subpoena is unduly burdensome.  At its core, the five production requests are limited to documents and communications about one project conducted by three GES employees on behalf of Defendants.[5] GES has failed to meet its burden to justify the requested relief.

As this Court has recognized, the party seeking to quash a subpoena bears the burden of demonstrating why such relief is warranted.  *U.S. Dep't of Treas. v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014); *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).  That burden is particularly heavy when the party is seeking to quash the subpoena in its entirety.  *U.S. Dep't of Treas.*, 301 F.R.D. at 28.  "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances."  *Id.* (quoting *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005)).  GES presents no compelling argument to justify quashing or narrowing the subpoena.

The courts balance six factors in assessing whether a subpoena is proportional and relevant to the needs of the case, as required by Federal Rule of Civil Procedure 26:  (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of

---

[5] *See* Opp'n at 31, noting that there are only "three GES custodians that worked on the Madison Memory Study."

discovery; and (6) whether the burden or expense of the proposed discovery outweighs its likely

benefit.  Fed. R. Civ. P. 26(b)(1); *FTC v. Staples, Inc.*, No. 15-2115 (EGS), 2016 WL 4194045,

at *2 (D.D.C. Feb. 26, 2016).

The subpoena seeks documents that are critical to a core issue at stake in this case.  GES'

work in reanalyzing the Madison Memory Study data goes to the central question of whether the

study actually showed any memory benefits from taking Prevagen.  As a matter of fundamental

fairness, Defendants should not be permitted to rely on selected post hoc analyses of partial data

with allegedly positive results, while refusing to disclose any other post hoc analyses that failed

to show positive results.  Without a complete picture of just how extensively GES mined the

study data, how many different subsets were analyzed, and how many different methodologies

were applied, the FTC cannot assess whether the subgroup outcomes Defendants now rely on are

merely a matter of chance.  The more analyses GES ran on the study data, the more likely at least

some results would appear positive by chance.

In addition, the stakes for consumers in this matter are high.  As of mid-2015, consumers

had already spent more than $165 million on Prevagen products in the hopes of preventing

memory loss and cognitive decline associated with aging.  Compl. ¶21.  Defendants have

continued to aggressively market and sell Prevagen, including through an extensive ongoing

national television campaign, and consumers continue to spend many millions each year on a

product that Plaintiffs contend is wholly ineffective.

With respect to the remaining factors – relative access to the requested documents, party

resources, and burden of production – counsel for Defendants and GES mischaracterize what has

already been produced in this case.  Contrary to repeated assertions throughout the Opposition

Brief that the documents the FTC seeks from GES have already been produced by Defendants

(Opp'n at 4, 9, 12, 30, 31), the FTC has been unable to locate any documents in Defendants'

production related to GES's underlying work on the Madison Memory Study.[6]  It also appears

that Defendants' production contains no communications between Defendants and GES.[7]  The

only documents in Defendants' production that contain any reference to GES are the white

papers in which Defendants selectively disclosed the two GES analyses that caused a waiver of

work product protection and led the FTC to issue this subpoena.  *See* Declaration of Michelle

Rusk, attached hereto, ¶ 5 ("Rusk Decl.").

      The absence of GES documents and communications in Defendants' production is not

surprising.  Defendants have repeatedly objected to turning over any documents in the possession

or control of an outside entity such as GES, even though they presumably would have access to

the work they hired GES to perform.  For example, in response to Plaintiffs' Document Requests

to Defendants, seeking documents related to GES's analyses of the Madison Memory Study and

communications with consultants, including GES, Defendants filed objections indicating that

they would not provide any information outside of Defendants' "possession, custody or

control."[8]  Counsel's assertions now that "there is no reason the FTC cannot seek such

---

[6] Defendants' production includes numerous documents related to their own work on the
Madison Memory Study, but none regarding GES's work re-analyzing the study data on
Defendants' behalf.  The FTC is not seeking a duplicate production of the Defendants' work on
the Madison Memory Study from GES, but should be entitled to discover which of Defendants'
study documents GES relied on in conducting its own work.

[7] The Defendants' still incomplete production is an unwieldy and unorganized database
containing more than 80,000 documents to date, without any indication of which documents are
produced in response to which requests.  FTC staff's searches of the production database for
documents containing the words "GES" or "Georgetown Economic," or the names of individuals
involved in the GES work, including Robert N. Fenili, Janet Liang, and Howard Beales,
produced no documents or communications other than the white papers.  Rusk Decl. ¶ 5.

[8] *See* Defs. Quincy Bioscience Holding Company, Inc., Quincy Bioscience LLC, Prevagen, Inc.,
and Quincy Bioscience Manufacturing, LLC Resp. and Obj. to Pls.' First Doc. Req., Oct. 22,

communications from the Quincy Defendants themselves" (Opp'n at 31) and that "the FTC has not even attempted to show that it cannot obtain such information from the Quincy Defendants" (Opp'n at 32) are disingenuous.  The same counsel represents both GES and Defendants and is fully aware that the FTC has, in fact, attempted to obtain GES communications and documents from Defendants and that Defendants have objected to producing them.

GES also overstates the burden of complying with the subpoena.  Counsel provides an estimate of "over twenty thousand" potentially responsive documents that would need to be reviewed (Opp'n at 31), an estimate which counsel never shared with the FTC prior to filing its Opposition Brief.  That estimate is based on a blunt tool – electronic keyword searches – that is likely to pull in a large volume of irrelevant documents.  Given the limited scope of the GES project at issue, and the fact that there are only three primary custodians, it seems likely that GES could conduct a manual search limited to relevant folders identified by the custodians.  Such an approach would likely yield a much smaller and more precise estimate of responsive documents.

Whatever the number of responsive documents, "volume alone is not determinative" of undue burden.  *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984).  This Court rejected the "volume" argument in *U.S. Dep't of Treas. v. Pension Benefit Guar. Corp.,* finding that Treasury's claim that it would have to search a "significant number of documents" fell short of the "heavy burden" it carried to justify quashing a subpoena.  *U.S. Dep't of Treas.*, 301 F.R.D. at 28–29, citing *Northrop Corp.*, 751 F.2d at 404.  Similarly, in *Fairholme Funds,* the court dismissed Treasury's broad assertion that it would take "hundreds of hours" to

---

2019, at 26, 30-31 (Obj. to Req. 11 and 13).  Defendants also have made general objections to the extent discovery requests include any documents in the custody or control of entities other than Defendants.  *Id.* at 5 (Gen. Obj. 16).  Rusk Decl. ¶¶ 3-4 and Ex. A thereto.

comply with the subpoena.  *Fairholme Funds, Inc. v. FHFA*, No. 1:13-CV-1053-RCL, 2019 WL 5864595, at *3 (D.D.C. Nov. 8, 2019).  The court explained that assertions of burden must be both specific and concrete, and such assertions without "specific estimates of staff hours needed to comply" should be "categorically rejected."  *Id.* at *2.[9]

Moreover, establishing that there is some burden to the production is not enough.  Rather, the production must be *unduly* burdensome based on a balancing of all factors.  *See, e.g.*, *Fairholme Funds*, 2019 WL 5864595, at *2.  Balancing all relevant factors, GES has failed to meet its burden.  The FTC's subpoena is "relevant and proportional to the needs of the case" and thus should be enforced.  *See FTC v. Staples, Inc.*, 2016 WL 4194045, at *2.

Should the Court be persuaded, however, by any of GES's arguments regarding specific requests, the appropriate remedy would be to grant the motion to compel in part, rather than decline to enforce the subpoena in its entirety.  *See*, *e.g.*, *U.S. Dep't of Treas. v. Pension Benefit Guar. Corp.*, 351 F. Supp. 3d 140, 160 (D.D.C. 2018) (granting in part and denying in part respondents' renewed motion to compel after concluding that "Treasury's broad, undifferentiated claim of privilege must yield to the Respondents' showing of need for the majority of documents Respondents seek"); *Millennium TGA, Inc. v. Comcast Cable Comm. LLC*, 286 F.R.D. 8, 13-14 (D.D.C. 2012) (despite finding that undue burden would justify denial of motion to compel, court exercised its discretion to enforce the subpoena in modified form).  For example, the Court could alleviate any perceived burden on GES by not requiring production of documents already produced by Defendants, or could compel compliance with all requests except Request No. 5

---

[9] Counsel provides no estimate of the number of hours it would take, or the cost to GES of complying with the subpoena.  Given that Defendants hired GES to do the work at issue and their counsel is now representing GES in the opposition to this subpoena, it is not clear that GES will incur any costs.

(relating to GES's work on other clinical studies), while still requiring GES to produce the core documents sought in the subpoena.

## IV.   THE MOTION SHOULD NOT BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

GES, which is located in this District, asks the Court to transfer the FTC's motion to the Southern District of New York ("SDNY") without explaining why that venue is preferable when all parties have a D.C. presence and the motion concerns issues severable from the underlying case's merits.[10]  The FTC opposes transfer because the parties are nearing the close of fact discovery and a transfer would delay resolution of the FTC's motion and potentially require yet another extension of discovery deadlines.  Plaintiffs have already agreed to extend the close of fact discovery from the end of April to the end of July after Defendants failed to produce documents on a timely basis and to substantively respond to two basic interrogatories.  There is no special, streamlined approach in place in the issuing court for resolving discovery disputes, and a transfer likely will necessitate changes in the parties' discovery schedule.  None of the factors usually justifying transfer are present, and the only party that stands to benefit from such a transfer is not GES, but Defendants, who have already postponed litigation by dragging out fact discovery for 10 months.

"There is a presumption that subpoena-related disputes be litigated in the district designated for compliance."  *FDIC v. Galan-Alvarez*, 15 Misc. 752 (CRC), 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (citing *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014)).  Federal Rule of Civil Procedure 45(f) states that a compliance court "***may***

---

[10] Despite multiple meet and confers prior to the FTC's filing of the instant motion, and email exchanges wherein the FTC agreed to afford GES counsel an extra two weeks to oppose the motion, the FTC first learned that GES was requesting a transfer when it was served with GES' opposition to its motion to compel.

transfer a motion [to compel] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." (emphasis added).  This Court may resolve the FTC's motion, even though GES consents to a transfer, if it finds that there are no exceptional circumstances to justify a transfer.  *See HT S.R.L. v. Velasco*, 15 Misc. 664 (RBW), 2015 WL 13759884, at *2, n.2 (D.D.C. Nov. 13, 2015) (denying motion to transfer because it would result in "tremendous waste of resources" sustained by petitioner and the compliance court); *cf. Google, LLC v. Fortress Inv. Grp. LLC*, No. 20 Misc. 132 (KPF), 2020 WL 1304039, at *1 (S.D.N.Y. Mar. 17, 2020) (granting motion to transfer not because non-parties consented but because issuing court was "best-positioned to address the subpoena dispute" given its nature and underlying action's posture and complexity).  It would seem unusual for a non-party to request a transfer away from the district where it is located without providing any reason for the request, as GES has done here.

In determining whether "exceptional circumstances" exist, this Court should consider several factors, including the "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation."  *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). Exceptional circumstances do not exist here, and therefore, the *Judicial Watch* factors do not favor a transfer.

The underlying case's lack of complexity and the fact that it is not procedurally advanced weigh against transfer.  The case is a straightforward, stand-alone law enforcement action brought by Plaintiffs, the FTC and the People of the State of New York, to challenge Defendants' conduct in connection with their marketing and sale of Prevagen for purported memory and other cognitive benefits.  Though Plaintiffs filed their complaint against Defendants

in 2017, discovery in this matter did not begin until September 2019.  The parties agreed to

bifurcated fact and expert discovery, with fact discovery currently set to close at the end of July

2020.  A trial date and all other case deadlines, including for the close of expert discovery and

the filing of dispositive motions, have not been set, and the assigned judge in the SDNY has not

had the opportunity to resolve any discovery disputes but has merely endorsed the parties'

stipulated case schedules.  Therefore, there are no rulings or pending motions in the underlying

litigation with which a holding of this Court on the FTC's motion to compel would conflict.

Moreover, the FTC's motion presents "legal question[s] severable from the merits of the

underlying litigation." *FDIC v. Galan-Alvarez*, 2015 WL 5602342, at *3 (denying motion to

transfer where motion to quash required the court to determine whether a legal doctrine protected

high-ranking government officials from testifying).  At issue are whether Defendants waived

protection for GES's analyses through their disclosures, and the proper scope of that waiver.

The assigned judge in the SDNY has not grappled with these or related issues, and they are

"neither complicated nor so bound up with prior rulings in the underlying case such that it would

be imprudent for this court to rule." *Hood v. City of Chicago*, No. 1:19-mc-00123(APM), 2019

WL 5295169, at *3 (D.D.C. Oct. 18, 2019) (denying motion to transfer where underlying action

had been pending for several years and issuing court had ruled on several discovery issues

because issues with deposition subpoenas included burdensomeness of testimony and whether

reporter's privilege applied, and these issues were neither complex nor rested on facts or law

issuing court was uniquely positioned to decide).

These factors combined are inapposite to those in other cases where a transfer has been

granted.  *See, e.g.*, *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286,

288 (D.D.C. 2015) (finding exceptional circumstances where case had "been pending for almost

21

three and a half years" and the issuing court had "issued a multitude of orders resolving significant procedural and discovery disputes"); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 11-12 (D.D.C. 2014) (finding exceptional circumstances where case was highly complex patent infringement suit and issuing court had "already supervised substantial discovery and begun preparations for trial"); *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 45-47 (D.D.C. 2014) (finding exceptional circumstances due to the "highly complex and intricate nature of the underlying litigation").

The FTC therefore requests that the Court deny GES's request to transfer disposition of the FTC's Motion to Compel to the Southern District of New York.

## V.      CONCLUSION

For the above reasons, the FTC respectfully requests that the Court grant its motion and compel GES to produce the documents requested by the FTC's subpoena.

Dated:  May 22, 2020                      FEDERAL TRADE COMMISSION
                                          ALDEN F. ABBOTT
                                          General Counsel

                                          By:  /s/ Edward Glennon
                                          Edward Glennon
                                          Michelle Rusk
                                          Annette Soberats
                                          600 Pennsylvania Ave., N.W.
                                          Maildrop CC-10528
                                          Washington, D.C. 20580
                                          eglennon@ftc.gov; mrusk@ftc.gov;
                                          asoberats@ftc.gov
                                          (202) 326-3126; -3148; -2921