UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>QUINCY BIOSCIENCE HOLDING COMPANY, INC., *et al.*,<br><br>　　　　　　Defendants. | No. 20-mc-23 (EGS) |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

　　Pending before the Court is Petitioner's, Federal Trade Commission ("Petitioner" or "FTC"), Motion to Compel Production of Documents Pursuant to Federal Rule of Civil Procedure 45. Pet'r's Mot., ECF No. 1.[1] The FTC is requesting an order compelling Georgetown Economic Services, LLC ("Respondents" or "GES"), to comply with a subpoena issued in connection with litigation, *Federal Trade Commission, et al. v. Quincy Bioscience Holding Company, Inc., et al.*, No. 17 CIV. 124 (LLS) ("N.Y. Matter"), pending in the U.S. District Court for the Southern District of New York ("Southern District"). *Id*. GES, a non-party in the N.Y. Matter, opposes the FTC's motion. *See*

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Resp'ts' Opp'n, ECF No. 4 at 6. Upon consideration of the motion, the response and reply thereto, the applicable law, and the record, the motion shall be **TRANSFERRED** to the U.S. District Court for the Southern District of New York.

## II. Background

"The FTC, together with its co-plaintiff the People of the State of New York by the Attorney General of the State of New York" ("NYAG") commenced the N.Y. Matter on January 9, 2017 against Defendant Quincy Bioscience Holding Company, Inc. ("QBHC"). *See* Pet'r's Mot., ECF No. 1 at 2. The N.Y. Matter stemmed from a 2015 FTC "investigation into the marketing of Prevagen," a dietary supplement and "a clinical trial known as the Madison Memory Study." *See* Decl. of Michelle Rusk ("Rusk Decl."), ECF No. 1-1 at 2 ¶ 3. During the investigation, QBHC "produced over 500,000 pages of material regarding the marketing and sales practices for Prevagen." *See* Decl. of John E. Villafranco ("Villafranco Decl."), ECF No. 4-5 at 2 ¶ 4. Through its investigation, the FTC obtained data regarding the study from QBHC and, prior to bringing the N.Y. Matter, "raised concerns about the Madison Memory Study, objecting to [QBHC's] selective reliance, after the fact, on only two subgroups with purported favorable results." Rusk Decl., ECF No. 1-1 ¶¶ 3-4. In

response to the FTC's concerns, QBHC, through counsel,[2] commissioned Respondent GES to "re-analyze[] the data from the two subgroups." *Id.* ¶ 5. GES's Re-Analysis partially formed the basis of a "revised writeup of the Madison Memory Study," by Kenneth Lerner ("Lerner Manuscript") which was later provided to the FTC. *Id.* ¶ 6. GES contends that it "conducted its own analysis of the data collected during the Madison Memory Study . . . [,] obtained the underlying data from [QBHC,] and did not have any involvement with the design or conduct of the Madison Memory Study itself." *See* Resp'ts' Opp'n, ECF No. 4 at 10-11; *see also* Villafranco Decl., ECF No. 4-5 at 2 ¶ 7. After the N.Y. Matter began, the Lerner Manuscript was used in support of QBHC's motion to dismiss, which the Southern District granted on September 28, 2017. *See* Rusk Decl., ECF No. 1-1 at 3-4 ¶¶ 7-8; *see also Fed. Trade Comm'n v. Quincy Bioscience Holding Co.*, Inc., 272 F. Supp. 3d 547, 549 (S.D.N.Y. 2017). However, the U.S. Court of Appeals for the Second Circuit vacated the dismissal and remanded the case on February 21, 2019. Rusk Decl., ECF No. 1-1 at 4 ¶ 8; *see also Fed. Trade Comm'n v. Quincy Bioscience Holding Co.*, Inc., 753 F. App'x 87, 88 (2d Cir. 2019). "Following remand, [QBHC] presented [the FTC with] . . . another re-analysis performed by GES of the subgroup data

---

[2] Villafranco Decl., ECF No. 4-5 at 2 ¶ 7.

3

from the Madison Memory Study." Pet'r's Mot., ECF No. 1 at 4. On December 11, 2019, the FTC issued a third-party subpoena to GES requesting that it produce the "following documents:

> 1. All documents concerning the scope of work to be performed, services to be provided, or compensation to be provided for work performed by GES with regard to the Madison Memory Study.
>
> 2. All documents concerning any statistical analysis of any data derived from the Madison Memory Study, including but not limited to any pretest analysis, intent-to-treat analysis, within-group or between-group analysis, subgroup analysis, supra-group analysis, reanalysis, post-hoc analysis, or seemingly unrelated regression (SUR) analysis.
>
> 3. All documents related to the design, protocol, and recruitment of subjects for the Madison Memory Study, including but not limited to any documents evidencing any inclusion or exclusion criteria for participation in the study.
>
> 4. All communications with any outside entity or person concerning the Madison Memory Study (including but not limited to any analyses of results or data of such study).
>
> 5. All documents relating to any other human clinical study commenced, discontinued, or completed by or on behalf of any Defendant involving apoaequorin or any product containing apoaequorin, including but not limited to any analysis of any data or results from any such study.

Pet'r's Mot., ECF No. 1 at 4-5; *see also* Resp'ts' Opp'n, ECF No. 4 at 13. On December 26, 2019, GES objected to the "[s]ubpoena on the grounds that [it] sought information protected by the

4

attorney-client privilege, the work-product doctrine, and the consulting expert protection provided by Fed. R. Civ. P. 26(b)(4)(D). . . . [and] imposed an undue burden on GES." Resp'ts' Opp'n, ECF No. 4 at 13.

## III. Analysis

Under Federal Rule of Civil Procedure 45, "a subpoena to produce materials, permit inspection of materials, or submit to a deposition 'must issue from *the court where the action is pending*.'" *In re Braden*, 344 F. Supp. 3d 83, 89 (D.D.C. 2018)(citing Fed. R. Civ. P. 45(a)(2))(emphasis in original). "[I]f the subpoena's recipient does not comply to the serving party's satisfaction, the 'serving party may move the court for the district where compliance is required for an order compelling production or inspection.'" *Id*. However, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer [the] motion . . . to the issuing court if the [party] subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

GES "requests that the motion be transferred to the Southern District where the underlying litigation is pending" and it consents to the transfer. Resp'ts' Opp'n, ECF No. 4 at 37. Noting that GES is located in the District of Columbia, the FTC "opposes [a] transfer because the parties are nearing the close of fact discovery and a transfer would delay resolution of the

5

FTC's motion and potentially require yet another extension of discovery deadlines." Pet'r's Reply, ECF No. 12 at 24. Specifically, the FTC contends that the "issue[s] [in this case] are whether [QBHC] waived protection for GES's analyses through their disclosures, and the proper scope of that waiver." *Id.* at 26.

To be sure, Rule 45(f) only requires one of two things when deciding a motion to transfer: the consent of the party "subject to the subpoena" *or* "exceptional circumstances." Fed. R. Civ. P. 45(F)(emphasis added). Though the Court is not mandated to transfer the motion, the Advisory Committee notes establish that the rule was meant to "protect local nonparties" from being dragged into another jurisdiction to dispute a subpoena. Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. Where, as here, when the nonparty subject of the subpoena, not only consents to the transfer to the issuing court, but actually requests it, the presumption is that the case should be transferred. *Id*.

Even if GES had not requested and consented to a transfer, a transfer would still be warranted because "exceptional circumstances" do exist in this case. Here, the FTC requests an untold number of documents relating to a five-year investigation and a long running case that has been through several rounds of dismissals and an appeal. *See* Pet'r's Mot., ECF No. 1 at 3-4.

6

According to GES-and undisputed by the FTC-it has provided over 500,000 pages of materials to the FTC and continues to provide materials throughout the discovery process overseen by the Southern District. *See* Resp'ts' Opp'n, ECF No. 4 at 10, 13. To make a determination concerning the contested documents, the issuing court overseeing the N.Y. Matter is in a better position to place the documents in context when reviewing: (1) for issues of privilege; (2) whether QBHC "waived protection for GES's analyses through their disclosures"; (3) "the proper scope of [any alleged] waiver"; and (4) whether the new set of documents would be unduly burdensome to produce. *See XY, LLC v. Trans Ova Genetics*, L.C., 307 F.R.D. 10, 13 (D.D.C. 2014)(finding that a transfer was warranted given the "complexity and posture of the underlying case."); *see also Google, Inc. v. Digital Citizens All.*, No. MC 15-00707 JEB/DAR, 2015 WL 4930979, at *3 (D.D.C. July 31, 2015)(transferring a discovery dispute to the issuing court when: (1) there was the "potential of disrupting the management of the underlying case"; (2) "determining the relevance of the contested documents to the underlying case [was] not straightforward"; (3) there was a "risk of inconsistent results"; and (4) there was no undue burden to the local nonparty.).

In arguing that the Court should retain the case, the FTC cites to *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-MC-

00752 (CRC), 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) for the premise that there is a "presumption that subpoena-related disputes be litigated in the district designated for compliance." Pet'r's Reply, ECF No. 12 at 24.  However, the FTC's reliance on *Galan-Alvarez* is misplaced because in that case: (1) it was the issuing party seeking to transfer the matter after the party subject to the subpoena brought a motion to quash the subpoena in its local court, which is exactly what Rule 45(f) was meant to protect against, *see id.* at 1; and (2) the court was easily able to determine that the issuing party had not shown that the high-ranking agency officials they sought to depose had "unique knowledge relevant to the underlying litigation or that the [issuing party] could not obtain the information sought from another source." *Id*. In this case, the FTC is expressly seeking documents because of their relationship to documents or arguments previously provided in the underlying N.Y. Matter. *See* Pet'r's Mot, ECF No. 1 at 3-4. Notably, the FTC inherently admits that the court overseeing the N.Y. Matter would be in a better position to make a discovery determination, because, according to the FTC, it was that court that used the contested "Re-Analysis" and "SUR-Analysis" as part of its review of the N.Y. Matter since QBHC attached the results of its studies to its dispositive motion. *Id.* at 10.

In addition, the "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of [the discovery] disputes." *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46 (D.D.C. 2014). Since the court overseeing the N.Y. Matter has already entered several discovery related orders, including revising the matter's discovery schedule and allowing the taking of remote depositions, *see* N.Y. Matter, *Stipulated Order Allowing Remote Depositions and Revising Fact Discovery Schedule*, ECF No. 110 (June 8, 2020); N.Y. Matter, *Stipulated Order for Taking Depositions by Remote Means*, ECF No. 119 (June 30, 2020); it would be more advantageous to have that same court make a determination in this dispute. *See Victim Servs., Inc. v. Consumer Fin. Prot. Bureau*, 298 F. Supp. 3d 26, 29 (D.D.C. 2018) ("At bottom, the [issuing] court is 'in a better position to rule on the ... motion . . . due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'").

**IV.   Conclusion and Order**

Having considered all of the relevant material, the Court concludes that the subpoena dispute involving GES should be transferred to the Southern District because: (1) GES consents to the transfer; and (2) the subpoena dispute involves

9

"exceptional circumstances" warranting transfer. *See* Fed. R. Civ. P. 45(f). It is therefore

**ORDERED** that the Motion to Compel Production of Documents, ECF No. 1, be transferred to the United States District Court for the Southern District of New York.

**SO ORDERED.**

**Signed:   Emmet G. Sullivan**
             **United States District Judge**
             **August 13, 2020**